HEALTH ALLIANCE NETWORK, INC.
and Qualcare, Inc., Plaintiffs,

v.

CONTINENTAL CASUALTY COMPANY,
CNA Insurance Company and Continental Insurance Companies, Defendants.

No. 01 Civ. 5858(SCR).

United States District Court,
S.D. New York.

July 30, 2007.

**124**

Kevin James Harrington, Harrington, Ocko & Monk, L.L.P., White Plains, NY, for Plaintiffs.

Robert Manuel Kaplan, Robson Ferber Frost Chan & Essner, LLP, New York, NY, for Defendants.

## MEMORANDUM DECISION
## AND ORDER

ROBINSON, District Judge.

Plaintiffs brought this action, alleging various claims, including unpaid fees, breach of confidentiality agreement, and misappropriation of trade secrets. After the jury rendered a verdict in favor of Plaintiffs, Defendants move for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, or in the alternative for a new trial pursuant to Rule 59. For the reasons set forth below, Defendants' motions are denied.

### I. Judgment as Matter of Law

### A. Defendants' Motions are Procedurally Barred

■ As a threshold matter, Defendants are procedurally barred from raising a 50(b) motion on Plaintiffs' cause of action for unpaid fees because they did not raise this in their initial motion under Rule 50(a). *See Trial Transcript, March 15, 2006* at 474–75 [1]; *Taylor v. National R.R. Passenger Corp.,* 868 F.Supp. 479, 482 (S.D.N.Y.1994)("The initial motion, brought before submission of the case to the jury, is a prerequisite to any motion brought after trial.") Defendants do not dispute that they did not address the unpaid fees claim in their initial 50(a) motion. Defendants do, however, argue that the court may waive this procedural bar in order to prevent manifest injustice. In support of this theory of manifest injustice, Defendants merely argue that the merits of their motion warrant waiver of the procedural requirements of Rule 50. In effect, Defendants argue that the procedural bar should be waived because they should win on the underlying motion. Such an argument would, of course, obviate the need for the procedural requirement in the first place. Since Defendants did not initially raise, under Rule 50(a), their motion for judgment as a matter of law on Plaintiffs' claim for unpaid fees, the Court declines to allow them to raise the issue at this point.

■ In addition, Defendants' failure to renew their Rule 50 motion at the close of evidence procedurally bars their current motion with respect to Plaintiffs' other causes of action.[2] *See Perez v. Manhattan Jeep Eagle,* No. 92 Civ. 9521, 1997 WL 403458, *3, 1997 U.S. Dist. LEXIS 10357, *7 (S.D.N.Y. July 17, 1997) ("If a defendant moves for judgment as a matter of law after the plaintiff rests, the defendant must renew this motion at the close of all the evidence, otherwise the defendant may not bring a motion for judgment as a matter of law under Rule 50(b).")(citing *Scala v. Moore McCormack Lines, Inc.,* 985 F.2d 680, 684 (2d Cir.1993); *Am. Nat'l Fire Ins. Co. v. Mirasco, Inc.,* 451 F.Supp.2d 576, 580 (S.D.N.Y.2006). *See also Pahuta v. Massey–Ferguson, Inc.,* 170 F.3d 125 ("In the absence of a Rule 50(b) renewed motion or extraordinary circumstances, an appellate court is without power to direct the District Court to enter judgment contrary to the one it had permitted to stand.")

---

1. Because two separate volumes of trial transcripts were produced with separate paginations, hereinafter, citations to the trial record will include a date and a page number (e.g. *March 15* at 474–75).

2. The Court notes that in December 2006, Rule 50 was amended so as to eliminate the requirement that a motion be made at the close of all the evidence, effectively overruling the relevant portions of the cases cited. However, the law in this Circuit during the relevant time period for this motion required such a motion at the close of evidence, with few exceptions.

Defendants argue that it was reasonable for them to assume that it was unnecessary for them to renew their Rule 50 motion at the close of evidence because the Court had reserved decision on Plaintiffs' causes of action for breach of confidentiality and misappropriation of trade secrets. However, a review of the record indicates that the Court denied Defendants' motion on these two causes of action with respect to the disclosure of provider lists, while granting Defendants' motion with regards to reimbursement rates. *March 15* at 484. Defendants made no further motion at the close of evidence.[3] Thus, Defendants' Rule 50 motion for judgment as a matter of law is denied.

## B. Rule 50(b) Standard

■ Moreover, even if this Court were to hold that Defendants are not procedurally barred, Defendants' motions would still be denied because they have not met the high burden required on a Rule 50(b) motion. "In deciding a Rule 50(b) motion, the Court has two options: if a verdict was returned, the court may, in disposing of the new motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law." *EMI Music Mktg. v. Avatar Records, Inc.*, 364 F.Supp.2d 337, 344 (S.D.N.Y.2005). In making it's decision, a court should consider the evidence "in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences from the evidence that the jury might have drawn in that party's favor." *Morales v. City of New York*, 99 Civ. 10004, 2001 WL 8594, at *3, 2000 U.S. Dist. LEXIS 18711, *6 (S.D.N.Y. December 29, 2000). Judgment as a matter of law should be granted when there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on an issue. *Nadel v. Isaksson*, 321 F.3d 266, 271 (2d Cir.2003). "Weakness in the evidence does not justify judgment as a matter of law." *Dagen v. CFC Group Holdings Ltd.*, 00 Civ. 5682, 2004 WL 830057, *2, 2004 U.S. Dist. LEXIS 6582, *7 (S.D.N.Y. April 13, 2004).

## C. Plaintiffs' Claim for Unpaid Fees

■ With respect to Plaintiffs' claim for unpaid fees, Plaintiffs were required to show by a preponderance of the evidence for each instance claimed: 1) that the services were rendered by a healthcare provider; 2) that those services were rendered to an employee of one of the Defendants' insureds; 3) that the healthcare provider was a member of Plaintiffs' network at the time the services were rendered; 4) that Defendants paid a discounted rate for those services; 5) that Health Alliance Network was entitled to a fee with regards to that performance of services; 6) the amount of the fee, and 7) that Health Alliance Network was not paid that fee by Defendants with regard to the performance of those services. Although Defendants contend that Plaintiffs failed to meet their burden with respect to each of these elements, this Court finds there was a sufficient evidentiary basis for a reasonable jury to find for Plaintiffs on this issue.

Plaintiffs introduced into evidence several reports which detailed the patient name, the name of the provider, the amount of the bill, the amount paid to the provider by Defendants, the insured, the amount of savings to Defendants, and the amount owed to Plaintiffs by Defendants that was unpaid. *See* Plaintiffs' Trial Exs. ("PX") 20–A, 187, 188, 189, 260. In addition, Pat Milone, a witness for Plaintiffs, testified that this information was drawn from data provided by CCN. *See, e.g., March 5* at 401, 403. While it may be true that Plaintiffs did not claim that they were owed fees on every one of those transactions—only on a *percentage* of those transactions as Defendants claim—this evidence still provided evidence as to *each* instance that Plaintiffs claim they were owed, while also providing information regarding other transaction where they were owed. Thus, this evidence was sufficient to provide a reasonable basis for a jury to find for Plaintiffs on this issue.

## D. Plaintiffs' Claim for Breach of Confidentiality Agreement

■ With respect to Plaintiffs' claims for breach of confidentiality provisions of their

---

**3.** The Court did reserve on the issue of the breach of confidentiality and misappropriation claims in response to *Plaintiffs'* motion for judg-ment as a matter of law on the issue of liability on these claims. *See March 16* at 623.

contract, Plaintiffs were required to provide evidence: 1) that Plaintiffs conveyed to Defendants information identified in the Agreement as "confidential", 2) that the information was confidential, 3) that Defendants disclosed this confidential information to someone not authorized for disclosure, 4) that Plaintiffs suffered damage as a result. With respect to the second prong of this analysis, the Court instructed the jury that a list of persons with whom someone does business will only be "confidential" when it has been developed at significant expense and over a period of years. Information which is readily available and that can be easily duplicated should not be deemed confidential. While Defendants, again, contend that Plaintiffs failed to provide an evidentiary basis for each of these elements, this Court finds that there was a sufficient evidentiary basis for a reasonable jury to find for Plaintiffs on this issue.

First, there was sufficient evidence that Plaintiffs provided Defendants provider lists, which were deemed confidential under the Agreement. *See, e.g., March 6* at 106; PX 2A at 6, 11–13.

Second, there was evidence sufficient for the jury to find that such information was confidential, including (a) the Agreement itself, PX 2A at 11–13, (b) other confidentiality agreements, PX 155, (c) testimony from Plaintiffs' witnesses regarding the confidentiality of the information and efforts taken to maintain the information as confidential, *see, e.g., March 6* at 122, 138–39; *March 7* at 234–35, *March 13* at 159–61, 166; *March 15* at 232, 255, 281, and (d) testimony regarding time and resources spent developing the information, *see, e.g. March 13* at 155; *March 14* at 273–276. This evidence provides a sufficient basis for a jury to conclude that this information was in fact confidential.

Third, Plaintiffs provided a sufficient evidentiary basis for a jury to find that Defendants disclosed their confidential information to CCN. Tracy Fritz, and employee of Defendants, for example, testified that she provided a list of providers to CCN, where the majority of the providers in New Jersey were from Plaintiffs' network, *see March 15* at 450, and this was done with the intention

of allowing CCN to recruit providers to their own network. *Id.* at 452.

Finally, Plaintiffs provided a sufficient evidentiary basis to find that Plaintiffs had been harmed by the breach of the confidentiality agreement. As noted already, Ms. Fritz, an employee of the Defendants, testified that the provider lists were disclosed to CCN so that CCN, a competitor to Plaintiffs, could recruit providers from the list. *See id.* In addition, a CCN employee, Glenn Turner, testified that CCN used this information to target providers with payments in excess of $25,000. *See March 13* at 13; *see also* PX 140. Plaintiffs also submitted evidence indicating that Defendants terminated their relationship with Plaintiffs after CCN was able to expand their network using Plaintiffs' confidential information. *See, e.g.,* PX 140. As noted by Defendants themselves in their opening papers, there was evidence which indicated that Plaintiffs were receiving $88,000 in fees from Defendants, and after Defendants shifted to CCN's network, they used that network for a period of 30 months. Thereafter, Plaintiffs argued that they would be entitled to damages for the $88,000 per month fee they lost during this 30 month period. While Defendants argue that there was also undisputed evidence which indicated that Defendants were moving towards a national network anyway, which they argue Plaintiffs could not provide, the jury was entitled to give less weight to that evidence in making its damages assessment.

Thus Plaintiffs provided a sufficient evidentiary basis for a reasonable jury to find for Plaintiffs on their claim for breach of the confidentiality agreement.

### E. Misappropriation of Trade Secrets

 With respect to Plaintiffs' claim for misappropriation of trade secrets under the Illinois Trade Secrets Act ("ITSA"), Plaintiffs were required to prove that the identities of workers' compensation service providers in Plaintiffs' service network were trade secrets and that Defendants Continental Casualty and Continental Insurance Company misappropriated Plaintiffs' trade secrets. A trade secret, in turn, is information, including lists of actual or potential service

providers or suppliers, that is sufficiently secret to derive economic value, actual or potential from not being generally known to other persons who could obtain economic value from the disclosure or use of such information. Further, the trade secrets must be the subject of efforts by Plaintiffs that are reasonable under the circumstances to maintain the secrecy or confidentiality of such information.

Defendants argue that they should be granted judgment as a matter of law on Plaintiffs' claim for theft of trade secrets on the same basis as their claim for breach of the confidentiality agreement. As noted already, there was a sufficient evidentiary basis for the jury to find for Plaintiffs on their claim for breach of confidentiality agreement, and for the same reasons, there was a sufficient evidentiary basis for the jury to find for Plaintiffs on their claim for misappropriation of trade secrets.

## II. Motion for a New Trial

Alternatively, Defendants move under Rule 59(a) for a new trial on various grounds. Defendants' motion is denied.

### A. Weight of the Evidence

■ Defendants move for a new trial on the same basis as their Rule 50(b) motion for judgment as a matter law. This motion is denied. "The standard for granting a new trial is less stringent than that for judgment as a matter of law. On a motion for new trial the judge may set aside the verdict even though there is substantial evidence to support it." *Am. Nat'l Fire Ins. Co. v. Mirasco, Inc.*, 451 F.Supp.2d 576, 582 (S.D.N.Y.2006). (internal quotations and citations omitted). "Still, a new trial may only be granted if the court is convinced that the jury has reached a seriously erroneous result, or that the verdict is against the weight of the evidence, making its enforcement a miscarriage of justice." *Id. See also Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir.1998). While a court "is free to weigh the evidence [itself] and need not view it in the light most favorable to the verdict winner", *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1047 (2d Cir.1992), a jury's verdict should rarely be disturbed. *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir.2002); *Rocco v. Long Island R.R.*, 411 F.Supp.2d 185 (E.D.N.Y.2006). A court should only grant a new trial when a jury's verdict is egregious. *DLC Management v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir.1998). With these standards in mind, and looking at the evidence itself, this Court finds that the jury's result was not against the weight of the evidence. As indicated already, Plaintiffs provided substantial evidence on each of the claims for which the jury found for the Plaintiffs. The Court finds that on each of these claims, the jury's verdict was not a "seriously erroneous result", nor was it "against the weight of the evidence, making its enforcement a miscarriage of justice". *Am. Nat'l Fire Ins. Co.*, 451 F.Supp.2d at 582.

### B. Curative Instructions Regarding Ms. Parker's Testimony

■ Defendants argue that the Court's curative instruction regarding Ms. Andrea Parker's testimony improperly swayed the jury. The Court instructed the jury that they should not consider Ms. Parker's testimony that Plaintiffs owed the Defendants money because Ms. Parker later stated that the only reason she gave this testimony was because it is what defense counsel told her. Defendants assert that the Court's initial characterization that Ms. Parker testified that Plaintiffs owed Defendants money was not accurate—i.e. that Ms. Parker never stated that. However, a review of the trial record indicates that the Court gave Defendants the opportunity to object to this instruction prior to it being given to the jury. Defendants did not object to the instruction on the grounds that it inaccurately reflected Ms. Parker's testimony, and indeed stated it "pretty accurately describes her testimony". *March 16* at 607. *See GSGSB, Inc. v. New York Yankees*, No. 91 Civ. 1803, 1996 U.S. Dist. LEXIS 10646, at *35 (S.D.N.Y. July 26, 1996)(new trial on the basis of an allegedly inadequate curative instruction not warranted where, among other things, party failed to object to curative charge once heard).

In addition, Defendants' argues that the Court's statement that Ms. Parker's testimo-

ny be viewed with "great caution and care because we do not know which portions, if any, of her other testimony was based, in whole or in part, on facts she was led to believe were true because the Defendants' lawyer told her that they were true", was based on factual predicates that did not exist. *Defendants' Br.* at 15. This is not true. The factual predicates are exactly what Ms. Parker stated, that her testimony regarding money owed by Plaintiffs was based on information provided by Defense counsel. Defendants' motion for a new trial on this basis is therefore denied.

## C. Inadequate Curative Instruction With Regards to Joseph Kettell

 Defendants further argue that the Court's failure to give an adequate curative instruction with respect to a Plaintiffs' expert is grounds for a new trial. This Court holds that its instruction was adequate. Plaintiffs' expert on the issue of revenues lost by Plaintiffs was Joseph Kettell. In addition to this issue, Mr. Kettell, over Defendants' objections, offered testimony regarding the amount of time it would take CCN to establish its own network. Thereafter, after determining that Mr. Kettell had no expertise in the area of the development of provider networks, the Court struck this portion of his testimony, and offered the following instruction:

> THE COURT: We are attempting to get before you, ladies and gentleman, appropriate information *regarding lost revenue* through this witness, who I have qualified as an expert for that reason *and no other.*

(*March 14* at 344–45)(emphasis added).

The Court therefore struck the inappropriate testimony, advised the jury as to the issue which the expert was qualified for, and instructed the jury that the expert was not qualified an expert in any other areas. Defendants, at this point, did not ask for a further instruction. *See GSGSB, Inc.,* 1996 U.S. Dist. LEXIS 10646, at *35 (new trial on the basis of an allegedly inadequate curative instruction not warranted where, among other things, party failed to object to curative charge once heard). Moreover, Defendants' argument that this inappropriate testimony

is the only basis for the time period for damages argued by Plaintiffs is both illogical and inconsistent. Mr. Kettell stated that it would take three to four years to develop a network, while, by Defendants' own admission, Plaintiffs measured their damages over a 30 month period. Moreover, Defendants earlier noted that this 30 month period was not based on any testimony from Mr. Kettell, but rather was based on the amount of time that Defendants used CCN's network after they stopped using Plaintiffs' network. *See Defendants' Brief* at 10. Defendants have therefore failed to demonstrate any prejudice from the allegedly inadequate instruction. Defendants' motion for a new trial on this basis is therefore denied.

## D. Discovery Violation

Defendants argue for a new trial on the basis that Plaintiffs' counsel and a Plaintiffs' witness, Pat Milone, should have been precluded from the trial for violating the confidentiality restrictions imposed by Chief Magistrate Judge Lisa M. Smith on data files ordered to be produced during discovery. Defendants argue that despite Judge Smith's order regarding the confidentiality, counsel violated this order by disclosing the data to Mr. Milone.

 "Trial courts have broad discretion in determining whether to impose discovery sanctions." *Credit Suisse First Boston Fin. Corp. v. LaMattina,* No. 05 Civ. 1350, 2005 WL 3479864, at *1, 2005 U.S. Dist. LEXIS 38447, at *3 (E.D.N.Y. December 20, 2005)(citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)). Moreover, a sanction for a discovery violation as severe as granting a new trial requires that the court find "willfulness, bad faith, or any fault", and that "the opposing party has been seriously prejudiced and that no lesser sanction is sufficient to deter discovery abuses." *See Chi Chao Yuan v. Rivera,* 96 Civ. 6628, 2000 WL 365036 at *2, 2000 U.S. Dist. LEXIS 4483, at *7 (S.D.N.Y. April 7, 2000)(noting that, where a party is moving for a new trial on the basis of discovery violations, "[d]ismissal (or in this case, judgment by default) is a drastic penalty which should be imposed

only in extreme circumstances.")(internal quotations and citations omitted). Defendants have failed to present sufficient evidence of willfulness, bad faith, or fault on the part of the Plaintiffs with regards to this discovery violation. Nor does it appear that Defendants have alleged any prejudice with regards to this violation sufficient to warrant a new trial. Defendants' motion for a new trial on this basis is therefore denied.

### E. Evidentiary Rulings

Defendants assert that a litany of evidentiary rulings by the Court should be the basis for new trial. For the reasons stated below, the alleged errors fail to either individually or collectively justify a new trial.

Trial courts have substantial discretion in the admission of evidence. *Parrish v. Sollecito*, 280 F.Supp.2d 145, 165 (S.D.N.Y.2003). Evidentiary rulings cannot be the basis of a new trial unless affirmance would deny substantial justice. *American National Fire*, 451 F.Supp.2d at 584. A court should only grant a new trial if it is likely that in some material respect that the jury's judgment was swayed by the error. *Perry v. Ethan Allen*, 115 F.3d 143, 150 (2d Cir.1997).

### 1. PX 128 and PX 129

Defendants allege it was error to admit PX 128 and 129, consisting of lists prepared by CCN of providers added to their network from New Jersey, on the grounds that they were hearsay evidence not subject to the business exception rule. The admission of these exhibits was not in error. "A business record may include data stored electronically on computers and later printed out for presentation in court, so long as the original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice." *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir.1994). Rule 803(6) favors the admission of evidence rather than its exclusion if it has any probative value at all. *United States v. Williams*, 205 F.3d 23, 24 (2d Cir.2000).

Margaret Jones, and in-house lawyer at CCN, testified that the data in question was kept in the ordinary course of business. *March 8* at 336. Defendants' claim, however, that the compilation itself is not a business record because it was culled from the database using a query, and therefore was "[d]ata prepared or compiled for use in litigation ... not admissible as business records". *Potamkin Cadillac Corp.*, 38 F.3d at 632.

This argument, however, ignores the realities of modern business litigation, where many business records are kept in databases, and parties query these databases in order to provide responses to discovery requests. If Defendants' argument was taken to its logical conclusion, parties responding to discovery requests during litigation would be required to produce *all* data found in their database for any data from the database to be admissible at trial. This situation would hurt both the producing party, who may be required to produce confidential and non-relevant data to outside parties, and to the party making the discovery request, who would have to sort through mountains of unhelpful information during discovery. Moreover, producing limited data from a larger database is more akin to reviewing a set of documents in response to a discovery request and producing only responsive documents, than it is creating a new data compilation or document for the purposes of litigation. Where as here, there are sufficient indicia of reliability of the data produced, and the underlying database is maintained through the ordinary course of business, this court holds that a smaller subset of data provided as evidence from the database is subject to the business records exception to the hearsay rule. *See id.* ("[T]he principal precondition to admission of documents as business records pursuant to Fed.R.Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable.").

Nor were the exhibits in question inadmissible because they were authenticated by Ms. Jones, an in-house lawyer, who did not participate in or supervise the department responsible for maintaining the data-

bases, nor prepare the lists herself. The "custodian need not have personal knowledge of the actual creation of the document to lay a proper foundation ... nor is there any requirement under Rule 803(6) that the records be prepared by the party who has custody of the documents and seeks to introduce them into evidence." *Phoenix Associates III v. Stone,* 60 F.3d 95, 101 (2d Cir.1995)(internal quotations omitted). Ms. Jones testified that she knew through her investigation the type of data collected, how it is inputted and maintained, where it is maintained, and also how the data in question was queried and collected for the purposes of litigation—which she supervised. *See March 8* at 333–37. These statements are sufficient to create a foundation by the custodians of the business records. *See Am. Equities Group, Inc. v. Ahava Dairy Prods. Corp.,* No. 01 Civ. 5207, 2004 WL 870260, *10, 2004 U.S. Dist. LEXIS 6970, *28 (S.D.N.Y. April 23, 2004).

### 2. PX 259–A

Defendants next argue that PX 259–A, a comparison between monthly reports prepared by CCN and a scanned database of checks Plaintiffs received. Defendants argue that the comparison contained inadmissible hearsay, and that there was an insufficient foundation because Plaintiffs used outside services to scan Plaintiffs' records in order to create the latter database. It is unnecessary for the Court to engage in a substantial discussion as to what extent this evidence was hearsay, and to what extent it was admissible under Federal Rule of Evidence 803(6) or 1006, because Defendants, who do not challenge the accuracy of the exhibit, do not establish that affirmance would deny substantial justice in this case. *American National Fire,* 451 F.Supp.2d at 584. Put simply, Defendants have not met the high standard required to create the basis for a new trial under Rule 59(a). Defendants' motion on this basis is therefore denied.

### 3. Judicial Notice of Calculation of Damages

■ Defendants argue that it was error for the Court to take judicial notice of a damages calculation prepared by Plaintiffs pursuant to F.C.R.P. 26(a)(C), and filed with the Court, which was a Defendants' proposed trial exhibit. Defendants assert that the Court was required to take notice of this document under F.R.E. 201, and that Defendants intended to cross-examine Mr. Milone using this document. To the extent that the Court's failure to take notice of that document was error, affirmation would not deny Defendants substantial justice. *American National Fire,* 451 F.Supp.2d at 584. It does not strike the Court as particularly troublesome that Plaintiffs' damages calculation would change as a litigation progresses and new facts come to light. Moreover, Defendants do not allege that Mr. Milone prepared or reviewed the document in question, and the document purported to show damages substantially *higher* than the damages ultimately sought by Plaintiffs. Defendants' motion on this basis is therefore denied.

### 4. Contents of Qualcare Website

■ Defendants argue that it was error to prevent them from showing the current content of Qualcare's website in order to demonstrate that the names of providers in their group healthcare network (not the workers compensation network at issue in this litigation) are available to the public on the website, because the pool of workers compensation providers is drawn from their group health network, and because the providers are free to disclose, upon inquiry, that they treat workers compensation patients. This decision was not error. The Court ruled that the current contents of the website were not relevant to this litigation and that only the contents of the website during the relevant time of the lawsuit were relevant. Moreover, the jury was aware that providers' names were available on the website, though whether the provider treated workers compensation patients was not indicated, because Ms. Catino testified as much on direct examination. *March 13* at 165. Thus, even to the extent that this ruling was error, Defendants have not demonstrated that affirmation would deny them substantial justice. *American National Fire,* 451 F.Supp.2d at 584.

#### 5. Mr. Kettell's Testimony

Defendants allege that it was error to allow Mr. Kettell to testify because he did not provide them with the computerized regression analysis, which they allege was the basis his expert testimony on damages, until the day he testified at trial. This argument is entirely without merit. The Court precluded Mr. Kettell from testifying as to his regression analysis, and did not admit his expert report into evidence. The basis for his testimony was historical information which was disclosed during discovery. *See March 14* at 345, 358. This ruling was therefore not error.

#### F. Excessive Verdict

Defendants move for a new trial on the basis that the verdict was excessive with regards to the jury's award on Plaintiffs' claim for breach or confidentiality and misappropriation of trade secrets. Defendants' motion is denied.

 In a diversity case, such as this, the assessment of the sum awarded is governed by state law standards. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 437–38, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).

 Under New York Law, "an award is excessive or inadequate if it deviates materially from what would be reasonable compensation." *Palmieri v. Celebrity Cruise Lines, Inc.*, 98 Civ. 2037, 2000 WL 310341, *7, 2000 U.S. Dist. LEXIS 3724, *22 (March 27, 2000). "To determine whether an award deviates materially from what would be reasonable compensation, New York state courts look to awards approved in similar cases." *Id.* (citing *Gasperini*, 518 U.S. at 425, 116 S.Ct. 2211). Under Illinois law courts do not compare the verdict to verdicts in other cases, but instead assess whether the evidence "tend[s] to show a basis for the computation of damages with a fair degree of probability." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 611 (7th Cir.2006).

Defendants fail to put forth any indication that the verdict in this case deviates materially from what would be reasonable compensation. Instead, Defendants merely point to the lack of basis for damages argued in their motion for judgment as a matter of law on Plaintiffs' breach of confidentiality and misappropriation of trade secrets claims. As discussed already, there was a reasonable basis for damages on these claims, and since Defendants fail to demonstrate that the award materially deviates from reasonable compensation, Defendants' motion fails under both New York and Illinois Law. Defendants' motion for a new trial on this basis is denied.

#### III. Conclusion

For the reasons stated above, Defendants' motion for judgment as a matter of law is DENIED. Defendants' motion for a new trial is DENIED. The jury's verdict is AFFIRMED.

*It is so ordered.*