**TRADE & TRANSPORT, INC.,**
Plaintiff–Appellee,

v.

**NATURAL PETROLEUM CHARTER-
ERS INCORPORATED,**
Defendant–Appellant.

**No. 764, Docket 90–7720.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 10, 1990.

Decided April 19, 1991.

William J. Brady, III (John G. Poles, Poles, Tublin, Patestides & Stratakis, New York City, on the brief), for plaintiff-appellee.

David A. Nourse (Nourse & Bowles, New York City, on the brief), for defendant-appellant.

Before KEARSE, PIERCE, and MINER, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Natural Petroleum Charterers Incorporated ("NPC" or "NPCI") appeals from a final judgment of the United States District Court for the Southern District of New York, Milton Pollack, *Judge,* confirming an arbitration award in favor of plaintiff Trade & Transport, Inc. ("Trade"), in the sum of $625,752.01 plus interest. *See*

738 F.Supp. 789 (1990). During the pendency of the arbitration, but after a partial final award had been rendered, a member of the three-member arbitration panel died. The district court ruled that the resulting vacancy had been properly filled and the arbitration had been properly conducted. On appeal, NPC contends principally that the partial final award should have been set aside and that a new panel should have arbitrated the dispute ab initio. For the reasons below, we affirm the judgment of the district court.

## I. BACKGROUND

The present controversy concerns procedures in connection with an arbitration to resolve a substantive dispute between the parties with regard to an agreement pursuant to which NPC chartered the M/V NIKOS KAZANTZAKIS (the "Vessel") from Trade to carry petroleum products from the United States to Europe in five voyages. The facts with respect to the arbitration proceedings are not materially in dispute.

### A. *The Substantive Dispute and the Commencement of Arbitration*

The substantive dispute concerned the designation of dates for the fourth of the five scheduled voyages. In October 1981, pursuant to the terms of the contract, Trade designated certain dates within which it would tender the Vessel and NPC could load the cargo for the fourth voyage. NPC made no response, and Trade later amended its designation of dates for that voyage. NPC objected that the new dates were outside the range permitted by the contract and that Trade's designation was therefore a breach. NPC sent its cargo on another ship and the NIKOS KAZANTZAKIS eventually took mitigating steps.

The charter contract contained an arbitration clause, which provided, in part, as follows:

Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed by the Owner [Trade], one by the Charterer [NPC], and one by the two so chosen. The decision of any two of the three on any point or points shall be final.... The arbitrators may grant any relief which they, or a majority of them, deem just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance.

Trade invoked this clause with respect to the dispute over the fourth voyage. It nominated Lloyd C. Nelson as its member of the proposed arbitration panel. NPC nominated Frank L. Crocker as its member of the panel. Nelson and Crocker chose Manfred W. Arnold to be the third member, and chairman, of the panel.

The first arbitration hearing was held on December 9, 1981. On that day, Trade commenced the present action against NPC in federal court for fraud and breach of contract, seeking both damages for the lost fourth voyage and demurrage accumulated from the first three voyages. Trade attached NPC assets to secure its claim of damages; NPC promptly moved to vacate the attachments. On December 17, the district court, in order to avoid interfering with the arbitration by making its own decision as to issues that the parties had committed to arbitration, suggested that the parties have the arbitration panel hold an immediate hearing on the contract claim. The parties agreed to do so.

#### 1. The Partial Final Award

At the arbitration hearing on December 18, the parties asked the arbitrators to make an immediate determination as to liability for cancellation of the fourth voyage, leaving for a later time the calculation of damages, if any, for that voyage and demurrage for the first three voyages. Counsel for Trade outlined Trade's understanding of the purpose of the hearing, stating as follows:

I don't think it is necessary to go so far as to physically render an award, because I think there are areas here that

cannot in fact be determined today, dollars and cents damage amounts, but I think findings can be made with regard to the issue of liability, reserving for a future time or a future hearing the actual physical calculation of the dollars and cents amounts that might be involved.

Counsel for NPC agreed:

> There are two claims in this Arbitration. One claim is that the Charterer, NPCI, breached the Contract of Affreightment with respect to wrongful cancellation of the NIKOS KAZANT-ZAKIS for voyage number 4. That is a cancellation problem....
>
> The second issue is, is the Charterer, NPCI, responsible for demurrage....
> I am not in the position tonight to comment on demurrage. I don't think the Arbitrators need to sit on a Friday night to consider a claim for demurrage....
> . . . .
> What I think the Arbitrators can do tonight is to deal with the root problem that led to this Arbitration going forward on the basis that it did. That is to say, they [Trade] have contended that the vessel was wrongfully cancelled....
> . . . .
> The question of cancellation is a straightforward question. You can consider whether the vessel was tendered within the proper time or not, and you can decide that issue.
> . . . .
> The question to detain us in which I hope you can answer was the vessel rightfully cancelled? [*sic*] And I am prepared to proceed on that basis.

The arbitration panel acceded to the parties' request. It proceeded immediately to hear evidence and argument, and rendered its decision on liability on that day ("December 1981 Award"), stating that it had agreed "to render a partial final award" immediately "because counsel for both parties have so requested."

In the December 1981 Award, the panel unanimously found that NPC had "fail[ed] to provide [Trade] with a fourth cargo under the contract," and it therefore found NPC liable for any damages flowing from the cancellation of the fourth voyage.

## 2. NPC's Motion for Reconsideration

In 1982, NPC asked the panel to hear additional evidence on the liability question, arguing that Trade had presented false evidence at the December 18 hearing. In connection with this motion, the panel conducted two hearings. In an Interim Opinion dated August 10, 1983 ("Interim Opinion"), the panel unanimously denied the motion on both substantive and procedural grounds. The panel rejected NPC's contention that the December 1981 Award could be reconsidered as nonfinal:

> At page 208 of the transcript, the panel stated that it would render "a partial final award". The decision was final with respect to the liability with the determination of damages to be dealt with at a later date. To remove the element of finality, which [NPC is] suggesting, would strip the partial final award of any significance at all.

Interim Opinion at 5. Given the finality of the December 1981 Award, the panel stated that it was, with respect to that award, *functus officio, i.e.*, without power to modify it. The Interim Opinion stated that "[i]t is the panel's understanding that the state of the law is such that it does not permit a panel to review or modify a Partial Final Award which has the same finality and effect as a Final Award." *Id.* at 4 n.*. The panel stated that it had acceded to NPC's request for a further hearing only because of the "special circumstances," *i.e.*, that

> (1) both counsel represented to us that the Federal Court had requested the expedited hearing for the purpose of our making a finding of fact on a material issue; (2) a Partial Final Award was issued; (3) the Federal Court may have in its proceeding been guided or influenced by this Partial Final Award and (4) counsel for [NPC] alleged that the panel received false testimony and/or fraudulent evidence.
>
> We believe that when an arbitration award is rendered as a final award or, as

in this instance, a partial final award, the arbitrators become functus officio as to the issue upon which the Final or Partial Final Award was made.

*Id.* at 4. The panel also concluded that the award had not been based on fraudulent evidence. *See id.*

### 3. The Death of Crocker

In August 1984, before further proceedings in the arbitration, Crocker died. In April 1985, NPC nominated Jack Berg as its new arbitrator to replace Crocker. In August 1985, it moved in the district court to compel Trade as well to nominate a new arbitrator; it contended that the two new arbitrators should, under the arbitration provision of the contract, appoint the third member of the new panel and proceed to rearbitrate the entire dispute from the beginning.

After a hearing, the district court, by order dated September 24, 1985 ("September 1985 Order"), denied NPC's motion insofar as it requested appointment of a new panel. Instead, relying on its powers under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (1982) ("Arbitration Act" or "Act"), the court appointed NPC's nominee, Berg, as the replacement for Crocker on the original panel. Pointing to the provision in 9 U.S.C. § 5 for judicial "filling [of] a vacancy," the court reasoned that "[t]he statutory authority to fill a vacancy must necessarily be construed to refer to a pending arbitration." September 1985 Order at 2. The court remanded the case to the reconstituted panel to "proceed with all convenient speed to determine all questions involved in the submission of the parties, including the effect, if any, to be given to the hearing heretofore had, and the Partial Final Award heretofore rendered by the Arbitrators, and whether hearings of the arbitrators shall be limited to the issue of damages." *Id.* at 2–3.

### B. *Continuation of the Arbitration and Confirmation of the Award*

Appearing before the reconstituted panel of arbitrators, NPC pursued its efforts to have the dispute rearbitrated ab initio. It asked Arnold to resign and allow a new chairman to be chosen. Arnold refused, citing the district court's decision that, with the addition of Berg, the panel was properly assembled and could determine its own course. Arnold and Nelson agreed, with Berg not voting, that the December 1981 Award's finding of liability was correct, and that, as a partial final award, it could not be disturbed. The panel proceeded to hear evidence, and it eventually awarded damages to Trade. Berg dissented in part from the damage award.

In an opinion reported at 738 F.Supp. 789, the district court confirmed the damage award over objections by NPC. These objections related primarily to (a) the court's insertion of Berg into the existing panel and refusal to order the creation of an entirely new panel, and (b) the reconstituted panel's refusal to hear further evidence concerning liability for cancellation of the fourth voyage. The district court reaffirmed its ruling concerning Berg's replacement of Crocker and found the other objections to be without merit because the scope of the panel's inquiry had been expressly left to its discretion. This appeal followed.

## II. DISCUSSION

On appeal, NPC principally renews its contentions that the December 1981 Award was not final, that the panel acted improperly in refusing to reconsider the liability ruling, and that the Arbitration Act required that there be a whole new panel after Crocker's death. We find no merit in any of NPC's arguments, and we therefore affirm the judgment of the district court confirming the arbitration award.

In its challenges to the refusals to reopen the issue of liability, NPC relies on two general principles, neither of which is controlling here. First, it relies on the general rule that where one member of a three-person arbitration panel dies before the rendering of an award and the arbitration agreement does not anticipate that circumstance, the arbitration must commence anew with a full panel. *Cia de Navegacion Omsil, S.A. v. Hugo Neu Corp.*, 359

F.Supp. 898, 899 (S.D.N.Y.1973); *Fromer Foods, Inc. v. Edelstein Foods, Inc.*, 14 Misc.2d 1048, 1049, 181 N.Y.S.2d 352, 353 (Sup.Ct.Bronx County 1958); *Amalgamated Association of Street Electric Railway & Motor Coach Employees v. The Connecticut Co.*, 142 Conn. 186, 112 A.2d 501, 505–06 (1955); Annotation, *Effect of vacancy through resignation, withdrawal, or death of one of multiple arbitrators on authority of remaining arbitrators to render award*, 49 A.L.R.2d 900, 903–05 (1956). Second, it relies on the general rule that an arbitral determination is not final unless it conclusively decides every point required by and included in the submission of the parties. *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 573 (3d Cir. 1967).

■ The applicability of these two principles must be assessed in light of two other pertinent principles. First, the submission by the parties determines the scope of the arbitrators' authority. *See, e.g., Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987); *Murray Walter, Inc. v. Laborers International Union*, 54 A.D.2d 1055, 1056, 388 N.Y.S.2d 716, 718 (3d Dep't 1976). Thus, if the parties agree that the panel is to make a final decision as to part of the dispute, the arbitrators have the authority and responsibility to do so. Second, once arbitrators have finally decided the submitted issues, they are, in common-law parlance, *"functus officio,"* meaning that their authority over those questions is ended. *See, e.g., Ottley v. Schwartzberg*, 819 F.2d at 376; *Local P–9, United Food & Commercial Workers International Union v. George A. Hormel & Co.*, 776 F.2d 1393, 1394 (8th Cir.1985); *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d at 573; *A/S Siljestad v. Hideca Trading, Inc.*, 541 F.Supp. 58, 61 (S.D.N.Y.1981), *aff'd per curiam*, 678 F.2d 391 (2d Cir.1982). Thus, if the parties have asked the arbitrators to make a final partial award as to a particular issue and the arbitrators have done so, the arbitrators have no further authority, absent agreement by the parties, to redetermine that issue.

■ The latter principles govern the present dispute. In December 1981, the parties modified their original submission to the arbitrators in order to cause a bifurcated decision. They asked the panel to decide the issue of liability immediately, a decision that was expressly intended to have immediate collateral effects in the judicial proceeding. The panel understood that this was to be a final decision as to liability. Thus, its announcement of the December 1981 Award stated that the award was a "partial final award." Neither party disputed this characterization when the decision was rendered. Only later, in 1982, did NPC seek to reargue liability; in response, the panel's Interim Opinion unanimously reaffirmed the finality of the liability award, reminding the parties that the panel had made that award final because the parties had asked it to do so, and that with respect to liability the panel was therefore *functus officio*.

Accordingly, the general principles on which NPC relies are inapposite, for the December 1981 Award did conclusively decide every point required by and included in the first part of the parties' modified submission; that award was thus final and was rendered before Crocker's death.

■ We see no greater merit in NPC's contention that the court's approval of the insertion of NPC's new nominee, Berg, into the existing vacancy, rather than requiring the appointment of an entirely new panel, was inconsistent with the parties' contract and thus was unauthorized by the Act. Though NPC relies on the contract's provision that the panel shall consist of "one arbitrator to be appointed by the Owner, one by the Charterer, and one by the two so chosen," the contract was silent as to what should be done after a panel so constituted had been convened, had rendered a partial final award, and a vacancy occurred due to the death of one of the members. The Act provides that "[i]f in the agreement provision be made for a method of naming or appointing ... arbitrators ..., such method shall be followed; but if no method be provided therein, ... or if for any reason there shall be a lapse ...

in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint … arbitrators….” 9 U.S.C. § 5. The district court reasoned that "[t]he statutory authority to fill a vacancy must necessarily be construed to refer to a pending arbitration," September 1985 Order at 2, and that the reference in § 5 to "filling a vacancy" would make no sense if the Act were construed to require that whenever one arbitrator died the entire panel must be removed. Since the parties' agreement (a) did not state that the death of one arbitrator after a partial final award would have that effect, and (b) was silent as to the method by which a replacement arbitrator should be designated, it was within the authority conferred by the Act for the court to appoint to the panel NPC's new nominee, Berg, to replace Crocker, its original nominee. We also agree with the district court's conclusion that NPC's naming a successor to Crocker did not give NPC the right to replace the existing neutral arbitrator agreed upon by NPC's original nominee.

Finally, there is no merit in NPC's contention that the arbitration award should not have been confirmed because of the "misconduct" or "misbehavior" of the panel within the meaning of the Act. Section 10(c) of the Act allows the court to vacate an award

> [w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

9 U.S.C. § 10(c). NPC's claims of misconduct under this section—to wit, (1) Arnold's refusal to resign, (2) the panel's failure to set aside the December 1981 Award, and (3) the panel's failure to reconsider the liability issue in ruling on the damages issue—have no merit. These contentions are foreclosed by our conclusions above as to the propriety of the reconstituted panel and the finality of the December 1981 Award.

CONCLUSION

We have considered all of NPC's contentions on this appeal and have found them to be without merit. The judgment of the district court is affirmed.