09-3640-cv
Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2009

(Argued: March 12, 2010                    Decided: June 23, 2010)

Docket No. 09-3640-cv

————————

INSURANCE COMPANY OF NORTH AMERICA, now known as Century
Indemnity Company, and INA REINSURANCE COMPANY, now known as R&Q
Reinsurance Company,

*Petitioners-Appellants,*

— v.—

PUBLIC SERVICE MUTUAL INSURANCE COMPANY,

*Respondent-Appellee.*

————————

B e f o r e:

JACOBS, *Chief Judge*, LYNCH, *Circuit Judge*, and RESTANI, *Judge.*[*]

————————

Appellants Insurance Company of North America and INA Reinsurance Company

(collectively, "INA") appeal from a judgment of the district court (Harold Baer, Jr.,

————————

[*] The Honorable Jane A. Restani, *Chief Judge*, United States Court of International
Trade, sitting by designation.

Judge), granting Appellee Public Service Mutual Insurance Company's Rule 60(b)(2) motion based on newly discovered evidence that an arbitrator who had resigned was, in fact, able to rejoin the arbitration panel prior to the district court's decision on whether to convene a new panel or order a replacement arbitrator.  We conclude that the rule articulated in Marine Products Export Corp. v. M.T. Globe Galaxy, 977 F.2d 66 (2d Cir. 1992) – that, absent "special circumstances," if a vacancy arises on an arbitral panel due to the death of an arbitrator prior to the rendering of an award, a new panel should be convened – does not apply to a vacancy occasioned by a resignation, and that, in the instant case, the district court's decision either to reappoint the arbitrator who had resigned, or, in the alternative, to direct INA to appoint a replacement was proper pursuant to 9 U.S.C. § 5.

AFFIRMED.

—————————

LLOYD A. GURA, Mound Cotton Wollan & Greengrass, New York, New York, (Robert E. Wilder, Raymond S. Mastrangelo, Mound Cotton Wollan & Greengrass, New York, New York, and Stephen B. Burbank, Philadelphia, Pennsylvania, *on the brief*), *for Petitioners-Appellants*.

DANIEL HARGRAVES, (John McConnell, *on the brief*), Hargraves McConnell & Costigan, P.C., New York, New York, *for Respondent-Appellee*.

—————————

GERARD E. LYNCH, *Circuit Judge*:

Appellants Insurance Company of North America and INA Reinsurance Company appeal (collectively, "INA") from a judgment of the district court (Harold Baer, Jr., Judge), granting Appellee Public Service Mutual Insurance Company's ("PSMIC") Rule 60(b)(2) motion based on newly discovered evidence that an arbitrator who had resigned was, in fact, able to rejoin the arbitration panel prior to the district court's decision on whether to convene a new panel or order a replacement. We conclude that the rule articulated in Marine Products Export Corp. v. M.T. Globe Galaxy, 977 F.2d 66 (2d Cir. 1992) – that, absent "special circumstances," if a vacancy arises on an arbitral panel due to the death of an arbitrator prior to the rendering of an award, a new panel should be convened – does not apply to a vacancy occasioned by a resignation, and that, in the instant case, the district court's decision either to reappoint the arbitrator who had resigned, or, in the alternative, to direct INA to appoint a replacement was proper pursuant to 9 U.S.C. § 5. We therefore affirm the district court's order.

**BACKGROUND**

I. The Resignation of the Arbitrator

PSMIC commenced arbitration against INA in April 2007 seeking reimbursement under reinsurance contracts for payments made to its insured for the settlement of certain pollution claims. The arbitration commenced before a three-member panel consisting of an arbitrator appointed by INA, John Sullivan; an arbitrator appointed by PSMIC,

3

Thomas Tobin; and an umpire, Roger Moak. The panel supervised a substantial amount of discovery, received briefing, and held oral argument on PSMIC's motion for summary judgment regarding what it deemed to be INA's chief legal defense. On April 7, 2008, the panel granted PSMIC's motion for summary judgment rejecting INA's defense. All three members of the panel, including Sullivan, INA's appointed arbitrator, signed the order.

INA moved for reconsideration of this order on April 18, 2008, and a briefing schedule was set. However, on May 2, 2008, while the motion for reconsideration was pending, Sullivan advised the parties and the other panel members that he had been diagnosed with cancer, that he was to undergo a course of treatment that was to last approximately six weeks, and that he was doubtful he could perform in a professional or timely manner. The parties accepted his resignation.

The parties and remaining panel members disagreed as to how to proceed. On May 5, 2008, the remaining panel members ordered INA to appoint a replacement arbitrator. INA responded the same day, stating that it was unsure whether it would be proper for Sullivan to be replaced, and suggesting that a new panel might have to be constituted. The following day, PSMIC responded that it would be unwilling to convene a new panel, and argued that Sullivan should be replaced either by INA or by a court.

To avoid any "potential assertion of waiver," PSMIC included Sullivan on the email. INA wrote back a few hours later reiterating its position that it was still deciding

4

whether to replace Sullivan or constitute a new panel, and adding that:

> Mr. Sullivan has resigned and copying him on communications does not change his status. Additionally, in light of Mr. Sullivan's health situation, one would have hoped that PSMIC realizes that he has more urgent concerns th[a]n this matter. Indeed, given the situation, it is both legally improper and morally repugnant to continue to involve Mr. Sullivan.

INA added that "[s]o that Mr. Sullivan need not be bothered further, [INA] will agree that PSMIC has not waived any rights by failing to include him in further communications and hopefully, out of simple human decency, PSMIC will refrain from copying him." PSMIC apparently internalized this reproach and refrained from contacting Sullivan. The parties were unable to reach agreement on whether to replace Sullivan or convene a new arbitral panel. The remaining panel members found that PSMIC had "substantive rights," and that it would be "unduly prejudiced" if an entirely new panel were convened instead of simply replacing Sullivan and continuing the process. However, they acknowledged that INA refused to proceed in this fashion and suggested the parties seek guidance from a court.

Following this, INA filed a petition in the Southern District of New York for a stay of arbitration and an order disqualifying the panel and compelling the arbitration to start over with a new panel. PSMIC filed a cross-petition to compel INA to proceed before the two remaining panel members and a substitute for Sullivan, and to confirm the panel's April 7, 2008 summary judgment order.

5

## II. The December 10, 2008 Decision

The district court consulted the "general rule" that absent "special circumstances," "where one member of a three-person arbitration panel dies before the rendering of an award and the arbitration agreement does not anticipate that circumstance, the arbitration must commence anew with a full panel." Trade & Transport, Inc. v. Natural Petroleum Charterers Inc., 931 F.2d 191, 193-94 (2d Cir. 1991). Applying that rule to the context of Sullivan's resignation, the district court granted INA's petition for a new panel. The court acknowledged the potential for abuse and manipulation intrinsic in permitting a losing party a "'second bite at the apple'" upon resignation of his or her arbitrator, but found that because "there is no suggestion of any misconduct here and neither party disputes the severity of [the] health condition that forced Mr. Sullivan to resign," and because the resignation had occurred while a motion for reconsideration was being considered and there had been no "partial final award" granted by the panel, the arbitration should commence anew. The court concluded that it would be "unfair to force INA to submit its motion for [re]consideration [to] a panel comprised of two arbitrators who heard argument on, and ultimately decided, the summary judgment motion for which reconsideration is requested and one arbitrator who did not." PSMIC appealed and INA cross-appealed.

## III. PSMIC's Discovery of Sullivan's Recovery

On January 14, 2009, shortly after filing the Notice of Appeal, PSMIC's counsel

learned, through another client who sought to appoint Sullivan as an arbitrator, that Sullivan's health had improved to such a degree that he was again seeking work as an arbitrator. PSMIC's counsel wrote to Sullivan that day, copying the original panel members and INA's counsel, stating that he had learned that Sullivan had recovered and asking if Sullivan might be available to rejoin the panel, which would resolve the dispute regarding panel composition. INA's counsel responded, copying Sullivan, before Sullivan did and stated that INA was "unwilling to agree to allow Mr. Sullivan to rejoin the prior, defunct panel." On January 22, 2009, following more correspondence between the parties, Sullivan responded to PSMIC that "I am not willing to put my name forward [to rejoin the panel] because I believe that I have no right to do so. I stepped down from the panel on 5/2/2008 and am unwilling to attempt to change my status."

In early February of that year, PSMIC's counsel learned that Sullivan had attended a two-day arbitration conference in New York from November 6 to 7, 2008, that INA's counsel had also attended. This conference took place the week before the oral argument in the district court regarding INA's petition and PSMIC's cross-petition, where, needless to say, INA's counsel did not mention that he had seen Sullivan.

On February 13, 2009, after learning this information, PSMIC filed a Rule 60(b) motion seeking relief from the December 10, 2008 order on the basis of, *inter alia*, newly discovered evidence that Sullivan's health had improved to the point that he had been

7

actively seeking work by the time the district court rendered its original judgment.[1]

IV. The July 29, 2009 Decision

On July 29, 2009, the district court granted PSMIC's motion.[2] The court found that PSMIC's ignorance of Sullivan's recovery was justified, because INA had strongly exhorted PSMIC not to contact Sullivan following his resignation, noting that "INA cannot have it both ways. Having instructed PSMIC not to contact Sullivan and agreed that PSMIC would not waive any rights by complying with PSMIC's request, INA cannot now claim that PSMIC failed to exercise reasonable diligence to determine the condition of Sullivan's health in November 2008." The court added that if INA knew that Sullivan was healthy it was "disingenuous" for it to have stressed the "seriousness of Sullivan's illness" at the oral argument on the petitions.[3]

The court next found that evidence of Sullivan's recovery and availability would have been "admissible and would have changed the outcome of the [o]rder." The court

---

[1] PSMIC also sought relief to prevent "manifest injustice" pursuant to Rule 60(b)(6). This ground for relief was rejected by the district court, and PSMIC does not appeal this finding. Therefore, we do not address it. Because we affirm based on Rule 60(b)(2), we need not address PSMIC's Rule 60(b)(3) argument.

[2] The district court first issued its order on June 29, 2009, while PSMIC's appeal and INA's cross-appeal of the December 10, 2008 order were pending. After learning that jurisdiction over the dispute had lodged in this Court, the district court vacated its June order, and, after this court remanded the matter to the district court by stipulation, the court issued a "substantially identical" order on July 29, 2009.

[3] On appeal, INA asserts that it had no actual knowledge of Sullivan's ability to arbitrate at the time of the argument. Nevertheless, at oral argument before this Court, INA's counsel admitted that he had seen Sullivan at the November 2008 conference.

8

noted that, in its December 10, 2008 order, it applied cases dealing with the death of an arbitrator, because it "[h]a[d] no reason to question the seriousness of Sullivan's diagnosis and treatment," and stated that "[h]ad I known that at the time the Order was issued that Sullivan was actively soliciting engagements as an arbitrator, I could have reappointed Sullivan pursuant to my authority under 9 U.S.C. § 5 and thereby eliminated th[e] potential unfairness to INA while also addressing the two policy concerns noted in the Order [regarding the potential for manipulation and waste if a new panel must be convened whenever a party arbitrator resigns]." The court then found that the fact that Sullivan had resigned, but was actively seeking appointment to other panels, qualified as a " special circumstance" that justified departing from the "general rule" requiring a new panel be convened upon the death of an arbitrator, which the court observed was premised on "*permanent* unavailability of an arbitral panelist." (emphasis in original).

The court concluded that it had the power under 9 U.S.C. § 5 to reappoint Sullivan, reappointed him, and directed that if he was unwilling or unable to rejoin the panel, then INA would have to appoint a replacement. Sullivan informed the court that he would not accept reappointment to the panel, and INA appointed a replacement arbitrator.

INA now appeals.

**DISCUSSION**

I.  Standard of Review

We review questions of law de novo, India.com, Inc. v. Dalal, 412 F.3d 315, 320

9

(2d Cir. 2005), and a district court's grant of a Rule 60(b) motion for abuse of discretion. Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 729 (2d Cir. 1998). A district court abuses its discretion if it bases "its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id., quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).

II. Analysis

INA argues that the district court abused its discretion by granting PSMIC's Rule 60(b) motion, because the newly discovered evidence – Sullivan's availability to act as an arbitrator at the time of the district court's December 10, 2008 decision – was irrelevant to the court's decision since the law in our circuit is that whenever an arbitrator dies *or resigns* the panel must automatically be reconstituted anew absent "special circumstances" that are not present here, and because, even if it were relevant, PSMIC was not "justifiably ignorant" of this evidence. We disagree on both grounds.

First, we conclude that the Marine Products rule does not apply to vacancies resulting from resignations, because application of the rule in that context would create problems that do not arise in the case of vacancies caused by an arbitrator's death – principally the potential for manipulation by a party that, perceiving itself to be losing the arbitration, could disrupt the arbitration and obtain a new proceeding by pressuring its appointed arbitrator to resign. Therefore, Sullivan's availability was certainly relevant to the district court's decision on whether to convene a new panel or appoint a replacement

arbitrator pursuant to its power under 9 U.S.C. § 5. Second, PSMIC was justifiably ignorant of Sullivan's condition, because it was not required to monitor Sullivan's progress in his battle against cancer, especially following INA's insistence that PSMIC no longer contact him. For these reasons, we affirm the district court's July 29, 2009 order to reappoint Sullivan, or, in the alternative, to require INA to appoint a replacement arbitrator to the panel.

A. The Marine Products Rule Does Not Apply to Vacancies Resulting From Resignations.

Title 9 U.S.C. § 5 specifies certain circumstances under which a court may appoint an arbitrator:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5. Section 5 can be applied to "the filling of a vacancy on a panel of arbitrators." In re Salomon Inc. S'holders' Derivative Litig., 68 F.3d 554, 560 (2d Cir. 1995). INA does not dispute that the arbitration agreement provides no guidance as to

11

selecting a replacement arbitrator, or that unless the Marine Products rule governs the case, the default selection process under section 5 would permit the court to appoint a substitute arbitrator. However, as INA points out, we stated in Marine Products that, "[a]bsent any special circumstances," there is a "general rule" in our circuit that despite section 5, "where one member of a three-person arbitration panel dies before the rendering of an award and the arbitration agreement does not anticipate that circumstance, the arbitration must commence anew with a full panel." Marine Products, 977 F.2d at 68, quoting Trade & Transport, 931 F.2d at 194. INA argues that this rule also applies to resignations, and, therefore, because "special circumstances" were not present here, the court should have constituted the panel anew and erred in ordering that Sullivan be replaced pursuant to section 5.

However, INA has pointed to no decision where we have extended this "general rule" to apply to resignation.[4] For the reasons set forth below, we conclude that Marine

---

[4] INA does point to some district court decisions that referenced the "general rule" in dealing with resignations. See, e.g., Sec. Ins. Co. of Hartford v. Commercial Risk Reinsurance Co., 2007 WL 4917787 (S.D.N.Y. May 8, 2007) (citing Trade & Transport and finding reconstitution unnecessary following resignation because resignation occurred prior to any substantive proceedings); Home Ins. Co. v. Banco de Seguros del Estado (Uru.), 1999 U.S. Dist. LEXIS 22478, at *4 (S.D.N.Y. Feb. 17, 1999) (declining to reconstitute panel following resignation because parties agreed to proceed in two stages, but stating, without analysis, that when an "arbitrator dies or becomes incapacitated *in medias res* and the parties disagree as to how to proceed, the parties should begin arbitration anew"); Nissho-Iwai Co. v. Chem. Carrier, Inc., 1993 WL 485614 (S.D.N.Y. Nov. 23, 1993) (stating that because one of the arbitrators had resigned the panel must be reconstituted, but giving no analysis as to why and implying that the parties agreed to this arrangement). Needless to say, none of these cases are binding on us, and we do not find their references to the "general rule" in dealing with resignations, without

Products is distinguishable, and that its holding should not be so extended.

We note at the outset that our case law has tended to restrict, rather than to extend, the reach of the rule articulated in Marine Products. Indeed, PSMIC goes so far as to contend that this rule has been implicitly overruled. While that is a considerable exaggeration, PSMIC is correct that the manifest inefficiency of requiring a new panel to be constituted has made us reluctant to expand the scope of the Marine Products rule.

PSMIC's argument appears to be premised on a parenthetical in Zeiler v. Deitsch, 500 F.3d 157 (2d Cir. 2007), describing Trade & Transport's holding as "in domestic arbitration, absent express agreement to that effect, full panel should not be removed due to the death of party-appointed member; replacement arbitrator should be designated." Zeiler, 500 F.3d at 167. While, as we discuss below, it is fair to say that the authority of the Marine Products rule has somewhat eroded, and that it has not been extended to other contexts, Marine Products has not been overruled. Our precedents cannot be overruled by a stray dictum by one panel in a parenthetical description of a case that in fact preceded the precedent at issue.

The very case on which Marine Products principally relied in stating the "general rule" in fact created an exception to it. In Trade & Transport, the parties and arbitrators

---

analysis of whether the "general rule" should apply to vacancies resulting from resignations, as persuasive authority that the rule should be so applied. Similarly, INA's allusions to Trade & Transport's citation to sources dealing with resignation does not compel or persuade us to apply the Marine Products rule to resignations as well as death.

13

agreed to bifurcate the arbitration proceedings so the first stage would determine liability and the second damages. Trade & Transport, 931 F.2d at 193, 195. After the panel rendered a "partial final award" finding that liability was established, and denied a motion to reconsider the issue because it found that the panel was *functus officio*, i.e. "without power to modify" the award, one of the arbitrators died. Id. at 193-94. The arbitrator died after the panel's determination on liability, but before the damages phase of the arbitration. Id. at 194. The losing party, not surprisingly, demanded that the panel be convened anew. Id. Instead, the district court appointed a substitute arbitrator to replace the deceased arbitrator so that the proceeding could continue. Id. After the district court confirmed the panel's subsequent damages award, the losing party appealed arguing, *inter alia*, that a new panel was required due to the death of the arbitrator. Id.

We cited the "general rule," later relied on in Marine Products, requiring the convening of a new arbitral panel upon the death of an arbitrator, but found it inapplicable. Id. We concluded that because the parties had agreed to bifurcate the proceeding, because the arbitrator's death followed a partial final award as to liability, and because the parties' agreement did not state that the death of an arbitrator following a partial final award required constituting a new panel and was silent as to how to pick a replacement arbitrator, the district court had the authority to appoint a replacement arbitrator pursuant to 9 U.S.C. § 5. Id. at 195-96.

Despite the Zeiler parenthetical's suggestion to the contrary, Trade &

14

Transport does not stand for the proposition that express agreement is required for a court to order recommencement following the death of a panel member. Instead, Trade & Transport holds merely that where there is a vacancy on a panel due to the death of an arbitrator, and that panel has issued a partial *final* award, a replacement arbitrator can be appointed instead of constituting a new panel.

Zeiler also, while declining to apply the "general rule" articulated in Marine Products, did not abolish it. Indeed, it never explicitly considered it. Zeiler dealt with whether two members of an arbitration panel established pursuant to Jewish law could continue its proceedings following the resignation of an arbitrator. Zeiler, 500 F.3d at 160, 162. We permitted the two remaining panel members to proceed, but our decision was based on a reading of the relevant agreement as allowing such an arrangement. See id. at 166-67 ("The authority of the two remaining arbitrators after the resignation of the third one is essentially an issue of contract interpretation, grounded in the language of the agreements between the parties.").[5]

In short, Marine Products continues to state the rule applicable to the particular situation it addressed – vacancy caused by the death of an arbitrator in the absence of "special circumstances." Like the panel in Zeiler, we do not purport to overrule Marine Products – we merely find it distinguishable and therefore not controlling in the situation

---

[5] Moreover, just as in Trade & Transport, the panel had already decided the issue of liability, and only the issue of damages remained. Zeiler, 500 F.3d at 162-63, 167.

15

before us.

The rationale behind the Marine Products rule is that it is unfair to require a party to continue an arbitral proceeding after its chosen arbitrator has died, because the party would be disadvantaged by having a substitute join the remaining panel members after they had "worked together and been exposed to each other's influence," and after the deceased arbitrator has had some subtle and unknowable effect on them. See Cia de Navegacion Omsil, S.A. v. Hugo Neu Corp., 359 F. Supp. 898, 899 (S.D.N.Y. 1973). The rule is therefore premised on the notion that the unfairness to a party of having a substitute arbitrator appointed who will likely be disadvantaged because of his or her absence during previous deliberations outweighs the necessary waste and expense of commencing an arbitration completely anew.

However, applying a broad rule requiring that a new panel be convened to vacancies occasioned by resignations would open the door to significant potential for manipulation. "[A] party receiving unfavorable interim rulings would have an incentive to invite the member he designated to resign to forestall an anticipated ultimate defeat, or even . . . after securing favorable rulings that are confirmable, to precipitate an arbitrator's resignation in the hope of avoiding confirmation of a later unfavorable award." Zeiler, 500 F.3d at 167. While no one contends that the instant case involved such manipulation, it would be tempting for a party to pressure its party-arbitrator, implicitly or explicitly, to resign following an adverse ruling so that it could get another shot at winning before a

16

new panel. This concern is not present in the case of an arbitrator's death. The combination of the risk of manipulation and the inevitable waste in duplicating proceedings that is already present when the Marine Products rule is applied to vacancies resulting from death, see id. ("The agreement should not be read to countenance the waste of resources required to redo a protracted arbitration proceeding in the event that one member of a panel died or otherwise became unable to serve during the proceeding."), is sufficient to convince us that such a rigid rule should not be extended to resignations.

We acknowledge the potential unfairness to a party where a substitute arbitrator is appointed and tasked with deciding issues on which the original panel members have had previous argument and discussion. However, given the potential for manipulation and the waste inevitably occasioned by convening a new arbitral panel, we find that this potential unfairness is not sufficiently strong to require application of the Marine Products to resignations.

We are strengthened in this conclusion by the decisions of our sister circuits in similar situations. Confronting cases of arbitrators who resigned during the pendency of an arbitration, both the Seventh and Eighth Circuits declined to apply Marine Products, expressing considerable skepticism about the merits of that case. The Seventh Circuit rejected Marine Products outright, noting that it found "no such inflexible and wasteful rule [requiring that a new arbitral panel be convened as a result of a vacancy] in the law of arbitration." WellPoint, Inc. v. John Hancock Life Ins. Co., 576 F.3d 643, 646-47 (7th

17

Cir. 2009).  The Eighth Circuit similarly declined to adopt the Marine Products rule, noting that requiring a new panel be convened when an arbitrator resigns "would vitiate Section 5."  Nat'l Am. Ins. Co. v. Transam. Occidental Life Ins. Co., 328 F.3d 462, 465-66 (8th Cir. 2003).

We hold that, in dealing with vacancies resulting from resignations, the Marine Products rule does not apply, and district courts should use their power pursuant to 9 U.S.C. § 5 in deciding how to proceed.

B.  Given that the Marine Products Rule Does Not Apply to Vacancies Resulting from Resignations, the District Court's Grant of the Rule (60)(b)(2) Motion Was Proper.

1.  The Rule 60(b)(2) Standard

Rule 60(b)(2) provides for relief when a movant presents "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2); see also Boule v. Hutton, 328 F.3d 84, 95 (2d Cir. 2003) ("Rule 60(b)(2) provides relief when the movant presents newly discovered evidence that could not have been discovered earlier and that is relevant to the merits of the litigation.").  Relief under Rule 60(b) is "generally not favored and is properly granted only upon a showing of exceptional circumstances."  United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001).

2.  PSMIC was Justifiably Ignorant of Sullivan's Condition.

"In order to succeed on a motion pursuant to Rule 60(b)(2), the movant must

18

present evidence that is 'truly newly discovered or . . . could not have been found by due diligence.'" United States v. Potamkin Cadillac Corp., 697 F.2d 491, 493 (2d Cir. 1983). INA argues that the newly discovered evidence of Sullivan's availability to arbitrate prior to the district court's December 10, 2008 decision, could have been discovered by due diligence, and therefore the district court abused its discretion in granting the motion.

INA stresses that, although Sullivan said his treatment would only last six weeks, PSMIC did nothing to monitor Sullivan's condition in the months that followed, and adds that, if PSMIC had engaged in any sort of investigation, it could easily have found out that Sullivan was at the arbitration conference – the very one where INA's counsel *saw* Sullivan – since the list of attendees was made public. INA claims that its exhortation of PSMIC not to contact Sullivan said nothing about not doing so indefinitely into the future, and that, even if PSMIC had not wished to contact Sullivan directly, it could have contacted INA and they could have contacted him jointly.

INA's arguments are unconvincing. Following Sullivan's resignation to battle cancer, PSMIC was not required to investigate his progress against the disease. This is especially true given that INA was treating Sullivan's resignation as final, insisting on constituting a new panel without reappointing Sullivan, and relying on case law that is directly applicable to the *death* of an arbitrator. Moreover, INA had chastised PSMIC for contacting Sullivan shortly after his resignation, asserting that it was "both legally improper and morally repugnant to continue to involve Mr. Sullivan," and agreeing that

19

PSMIC would not "waive[] any rights by failing to include him in further communications." While INA is correct that this message did not purport to bar PSMIC from ever contacting Sullivan in the future, PSMIC was not required to monitor Sullivan's health under these circumstances. Due diligence does not require a party to monitor an arbitrator's battle against cancer following his resignation. The district court's finding that PSMIC was justifiably ignorant of Sullivan's recovery was not erroneous.

### 3. Evidence of Sullivan's Condition Was Admissible.

INA makes much of an argument that the district court erred by considering Sullivan's health following his resignation, because evidence regarding events occurring after a resignation is not relevant or admissible. However, this argument is premised on the applicability of the Marine Products rule. INA's argument is inapposite, because, as explained above, the Marine Products rule does not apply to the instant case, in which developments might have permitted a resigned arbitrator to resume his functions on an original arbitral panel. INA suggests no reason why a district court could not consider evidence of post-vacancy developments in deciding how to fill a vacancy pursuant to 9 U.S.C. § 5, and we see none. Therefore, we find the evidence was admissible and relevant.

### 4. The District Court Did Not Err in Reappointing Sullivan, and, in the Alternative, Directing INA to Appoint a Substitute Arbitrator.

INA does not seriously dispute that, absent the application of the Marine Products rule, the district court was justified in reappointing Sullivan or, in the alternative,

20

directing INA to appoint a replacement. While INA argues that a substitute arbitrator would lead to the same unjust result the district court attempted to avoid in its first ruling when it ordered that a new panel be convened, it has not pointed to any case law or persuasive argument why, given the facts of this case, the court could not choose to reappoint or replace Sullivan pursuant to its power under 9 U.S.C. § 5.

To the contrary, the district court's decision to reappoint Sullivan, or to require a replacement if Sullivan declined to rejoin, was eminently reasonable. This decision avoided the waste entailed in convening a new panel after the remaining arbitrators had already engaged in significant proceedings in the case. Reappointing Sullivan would have been an ideal solution, had he been willing to serve, as it would have put the parties exactly where they began, and limited any duplication in effort required if a replacement, let alone a new panel, were appointed. We see no error in the district court's taking into account INA's questionable conduct in failing to inform the court of Sullivan's apparent return to work, or the court's justifiable suspicion that any decision by Sullivan declining reappointment might be influenced by INA's litigation position. Before Sullivan responded to PSMIC's inquiry regarding his availability, INA had already stated that it would not accept his reappointment even if he were available. Sullivan would have been understandably wary of accepting reappointment lest he anger INA, the party that appointed him, and against whose interests he had already ruled. For these reasons, requiring the appointment of a replacement in the event that Sullivan declined

21

reappointment was reasonable.

In the context of this case, one side or the other might suffer prejudice no matter what the judge did. Appointing a new arbitrator might prejudice INA, because its substitute arbitrator could be disadvantaged in deliberations with the other two panel members who had previously heard evidence and deliberated together in the case. However, PSMIC would be prejudiced if INA were given a do-over before a new panel. Having won on an important issue in the arbitration – with the vote of INA's appointed arbitrator – PSMIC would be forced to relitigate the same issue before a new panel with the potential for an adverse result. Under these circumstances, it was well within the district court's discretion to take the path that involved significantly less waste. The decision was also supported by the court's concern about INA's conduct in not alerting the court to Sullivan's attendance at the conference, and then putting him under pressure, even if unintentionally, to decline reappointment by stating that it would not accept his reappointment to the panel in any event.

Thus, the district court's decision to reappoint Sullivan or require a replacement in the event he declined was not an abuse of discretion.[6]

---

[6] The December 10, 2008 order denied PSMIC's petition seeking confirmation of the panel's summary judgment order. The July 29, 2009 order vacated the December 10, 2008 order in its entirety, despite the irrelevance of the Rule 60(b)(2) motion to the status of the summary judgment order. Accordingly, when the reconstituted panel resumes this arbitration, it should be aware that no interlocutory confirmation was granted and INA's motion for reconsideration of the summary judgment order remains pending.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is AFFIRMED.