**RETIREMENT BOARD OF the POLICE-MEN'S ANNUITY AND BENEFIT FUND OF the CITY OF CHICAGO, et al., Plaintiffs,**

v.

**The BANK OF NEW YORK MELLON, Defendant.**

No. 11 CIV. 5459 WHP.

United States District Court, S.D. New York.

Sept. 11, 2013.

David R. Scott, Esq., Beth A. Kaswan, Esq., William C. Fredericks, Esq., Max R. Schwartz, Esq., Deborah Clark–Weintraub, Esq., Joseph P. Guglielmo, Esq., Scott + Scott LLP, New York, NY, Anne L. Box, Esq., Scott + Scott LLP, San Diego, CA, Geoffrey M. Johnson, Esq., Scott + Scott LLP, Cleveland Heights, OH, for Plaintiffs.

Michael Martinez, Esq., Matthew D. Ingber, Esq., Paula G. Lin, Esq., Christopher J. Houpt, Esq., Mayer Brown LLP, New York, NY, James H. Forte, Esq., Saiber Schlesinger Satz & Goldstein, LLC, Newark, NJ, for Defendant.

### MEMORANDUM & ORDER

### WILLIAM H. PAULEY III, District Judge:

Plaintiffs move under Federal Rule of Civil Procedure 15(a) to file a Third Amended Complaint adding allegations in support of claims this Court dismissed in a memorandum and order dated April 3, 2012. *See Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon,* 914 F.Supp.2d 422 (S.D.N.Y.2012). However, that decision is on appeal. Plaintiffs' motion to amend presents novel procedural issues concerning the relationship between a district court and the circuit court while an interlocutory appeal is pending. For the following reasons, a decision on Plaintiffs' motion is deferred until the appeal is concluded.

### BACKGROUND

#### I. *Plaintiffs' Allegations*

Plaintiffs bring this action individually and on behalf of a putative class alleging Defendant Bank of New York Mellon ("BNYM") breached various contractual and statutory obligations in its role as trustee for various mortgage-backed securities trusts.[1] Plaintiffs hold securities backed by mortgages underwritten by Countrywide Home Loans, Inc. and various affiliates (collectively, "Countrywide"). Those securities were issued by 26 trusts for which BNYM serves as

trustee. In their original complaint, Plaintiffs brought claims on behalf of a putative class with respect to securities they invested in as well as on behalf of investors in over 500 other securities backed by Countrywide loans with BNYM as trustee.

The gist of Plaintiffs' allegations are that in each transaction, Countrywide contractually represented that each of the loans in the particular trust met certain underwriting standards, and Countrywide pledged to cure, substitute, or repurchase any loans that breached those representations, BNYM, as trustee, was required to enforce that obligation by "putting back" defective loans to Countrywide, but failed to do so despite awareness of pervasive breaches across all of Countrywide's trusts. Moreover, Plaintiffs allege Countrywide failed in its obligations as master servicer of the loans and that BNYM failed to compel Countrywide to comply with those servicing obligations. Alleging that the documents governing each trust were substantially the same and that BNYM failed in its obligations with regard to each Countrywide trust, Plaintiffs sought to represent a class of investors that purchased securities issued by over 500 Countrywide trusts, the majority of which Plaintiffs did not invest in.

#### II. *Procedural History*

On April 3, 2012, this Court held Plaintiffs lacked standing to bring claims based on mortgage-backed securities no named Plaintiff invested in. *Ret. Bd.,* 914 F.Supp.2d at 426. In the same order, this Court also found the Trust Indenture Act (TIA) applied to the certificates issued by the trusts Plaintiffs did invest in, rejecting BNYM's arguments that the statute was inapplicable. *Ret. Bd.,* 914 F.Supp.2d at 427–29. On February 14, 2013, this Court certified its April 2012 order for interlocutory appeal under 28 U.S.C. § 1292(b).[2] On February 25, 2013, Plaintiffs filed a petition in the Second Circuit seeking review of this Court's standing decision, and BNYM filed a petition seeking review of the TIA decision. On May 14,

---

**1.** A more detailed account of Plaintiffs' allegations can be found in this Court's previous order. *See Ret. Bd.,* 914 F.Supp.2d at 424–25.

**2.** Docket Entry # 63 at 9–10.

2013, the Second Circuit granted both petitions.

After the appeal was docketed, Plaintiffs sought leave to file an amended complaint which, among other things, included allegations supporting Plaintiffs' standing to sue on behalf of investors who invested in securities the Plaintiffs did not.[3] BNYM consented to the bulk of Plaintiffs' proposed amendments, but objected to the class standing amendments. Plaintiffs subsequently filed a Second Amended Complaint including the amendments BNYM did not object to and now move under Federal Rule of Civil Procedure 15(a) for leave to file a Third Amended Complaint including the class standing allegations.

### III. *Plaintiffs' Proposed Amendments*

Plaintiffs' proposed amended complaint adds factual allegations uncovered in discovery that Plaintiffs argue bolster their class standing claims. They include allegations that BNYM employees considered Bank of America (the successor to Countrywide), not the securities holders, to be their client; that BNYM employees were aware Countrywide was not complying with its obligations to repurchase or cure defective mortgage loans; that BNYM had a policy of taking no action to force compliance from Countrywide unless directed to do so by investors owning a 25% voting share in a Countrywide trust; that BNYM was aware Countrywide may not have had sufficient assets to cover its liabilities but failed to protect the interests of investors in Countrywide mortgage-backed securities; and a Bank of America employee testified that the servicer did not put back loans to Countrywide because they were part of the same "SEC reporting segment."[4]

### IV. *Case Law Developments*

Plaintiffs also urge that after this Court's decision, two Second Circuit opinions "recarved the legal landscape with respect to the Circuit's class standing jurisprudence."[5] On September 6, 2012, the Second Circuit held in *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir.2012), that plaintiffs had standing to assert claims on behalf of purchasers of securities backed by loans originated by the same lenders who originated the mortgages backing the plaintiffs' securities. The Second Circuit ruled that "a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA*, 693 F.3d at 162 (internal quotations omitted, omission in original). Then, on March 1, 2013, the Second Circuit vacated a district court's dismissal of class claims and remanded for reconsideration in light of *NECA. N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp.*, 709 F.3d 109, 128 (2d Cir.2013).

### DISCUSSION

### I. *Legal Standard*

■ Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint should be freely granted "when justice so requires." Although leave to amend is "liberally granted," it may be denied if, among other reasons, the proposed amendments would be futile. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir.2008).

■ Having held Plaintiffs do not have class standing with respect to trusts they did not invest in, the amendments in the proposed Third Amended Complaint would be futile unless this Court reconsiders its previous decision. However, "[a]n interlocutory appeal, unless frivolous, generally divests the district court of jurisdiction respecting the issues raised and decided in the order on appeal." *Garcia v. Bloomberg*, No. 11 Civ. 6957(JSR), 2012 WL 3127173, at *1 (S.D.N.Y. July 27, 2012) (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103

---

**3.** *See* Docket Entry # 78.

**4.** Pls.' Mem. of Law (Docket Entry # 87) at 12–13.

**5.** Pls.' Mem. of Law at 2.

S.Ct. 400, 74 L.Ed.2d 225 (1982); *N.Y. State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1350 (2d Cir.1989)). The parties here agree this Court does not have jurisdiction to grant Plaintiffs' motion to amend because it raises issues decided in an order currently on appeal.

## II. *Rule 62.1*

But that is not the end of the matter. Rule 62.1, adopted in 2009, provides that if a party makes a motion the district court "lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."

Rule 62.1 codifies the procedure most courts used to address Rule 60(b) motions to vacate final judgments which had already been appealed. *See* Fed.R.Civ.P. 62.1 advisory committee's note; 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2911 (3d ed.). However, nothing in Rule 62.1's language limits its application to Rule 60(b) motions or to motions made after final judgment. The Advisory Committee's note confirms that it "adopts for *any* motion that the district court cannot grant because of a pending appeal the practice that most courts follow when a party makes a Rule 60(b) motion to vacate a judgment that is pending on appeal." Fed. R.Civ.P. 62.1 advisory committee's note (emphasis added); *see also Idaho Bldg. and Constr. Trades Council, AFL–CIO v. Wasden,* 11 Civ. 253(BLW), 2013 WL 1867067, at *3 (D.Idaho May 1, 2013). The drafting history of Rule 62.1 reveals that "[t]he new [Rule 62.1] provisions were originally drafted as an addition to Rule 60, addressing only relief under Rule 60 pending appeal," but "the proposal was broadened to include all circumstances in which a pending appeal ousts district-court authority to grant relief." Report of the Civil Rules Advisory Committee, Dec. 12, 2006 at 14. The Rule 62.1 framework therefore applies to this motion.

## III. *Prudence of an Indicative Ruling*

■ However, there is little indication the drafters of that rule intended it to be used in this manner: to ask a district court to issue an indicative ruling reconsidering the same question being reviewed by the court of appeals. In effect, Plaintiffs are requesting this Court to inform the Second Circuit it believes its own opinion should be reversed. Indicative rulings allow for the timely resolution of motions which may further the appeal or obviate its necessity. For example, a meritorious Rule 60(b) motion to vacate a judgment because of newly discovered evidence makes an appeal of that judgment unnecessary. But an indicative ruling on the very issue on appeal only interrupts the appellate process.

Plaintiffs present two reasons this Court should reconsider class standing despite the pending appeal and issue an indicative ruling stating the Court would grant the motion if the Second Circuit remanded for that purpose: (1) the Second Circuit is deciding the class standing issue based on a "stale complaint that does not incorporate significant and recently developed facts" and (2) recent Second Circuit decisions "have recarved the legal landscape with respect to the [Second] Circuit's class standing jurisprudence." [6]

Plaintiffs contend that the district court decision in *New Jersey Carpenters* was based on a "stale" record and outdated caselaw, and as a result, the Second Circuit vacated and remanded for consideration in light of *NECA.* They argue this matter is in a similar posture and an indicative ruling is "the fastest and most efficient way to achieve the result the Second Circuit reached in *New Jersey Carpenters.*" In Plaintiffs' eyes, an indicative ruling from this Court, followed by a remand from the Second Circuit, and then this Court's granting of their motion to amend "may obviate the need for an appeal, and would at least aid the Second Circuit in the exercise of its appellate jurisdiction, by framing the class standing issue on a record that explicitly takes *NECA* and recent rele-

---

**6.** Pls.' Mem. of Law (Docket Entry # 87) at 1–2.

vant factual information (and expert analysis) into account." [7]

Plaintiffs' argument that an indicative ruling is the most efficient way to achieve the outcome in *New Jersey Carpenters* assumes that that is the likely outcome of the appeal. Placing a district court in a position where it must predict the outcome of an appeal of its own decision is one of several reasons an indicative opinion is inappropriate here.

An indicative ruling would do little to aid the Second Circuit's consideration of the appeal. Plaintiffs make much of their argument that the appeal is being decided on a "stale record" without the benefit of additional facts they obtained in discovery. However, in their petition to the Second Circuit urging it to take the appeal, they described the issue as a "pure question of law" the Second Circuit could "decide quickly and cleanly." [8] Plaintiffs now disavow this position.[9] But Plaintiffs' former position appears correct. This Court held, categorically, that "Plaintiffs may not pursue claims relating to securities in which they never invested." *Ret. Bd.*, 914 F.Supp.2d at 426. That decision was not based on the insufficiency of Plaintiffs' allegations, which they now seek to bolster, but on an unconditional bar against asserting claims with regard to securities they never purchased.

Likewise, the Second Circuit would not benefit from this Court's analysis of *NECA*. Unlike a Rule 60(b) motion, where the appellate court benefits from the district court's evidentiary assessments, the legal question at issue here is reviewed *de novo* by the court of appeals. *Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 127 (2d Cir.2010). The Second Circuit needs no help deciphering the meaning of its own decision in *NECA*. And *NECA* was decided more than six months before Plaintiffs appealed this Court's standing decision. This is not a case where, while an appeal is pending, an intervening change in the law called the district court ruling into question, perhaps making

an indicative ruling the most expeditious course of action. If Plaintiffs wanted to argue to this Court that the class standing decision was erroneous in light in of *NECA*, they could have done so in the six months between that decision and their appeal.

If this Court issued an indicative ruling and the Second Circuit remanded, that would slow resolution of this action and impede the appeal. The claims at issue will not be finally resolved until the Second Circuit decides the TIA issue. Even if the class standing issues were resolved sooner, the parties cannot move for summary judgment or proceed to trial until the interlocutory appeal is complete. Plaintiffs state the Second Circuit could "remand the class standing issue," but it is the entire order that is appealed under 28 U.S.C. 1292(b), not discrete issues. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 115 (2d Cir.2004) ("[W]e have the discretion to consider any aspect of the order from which the appeal is taken."); *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 859 F.2d 242, 249 & n. 6 (2d Cir.1988) (despite district court's certification of a "portion" of its order court of appeals may "consider any aspect of the order from which this interlocutory appeal is taken"); *see also Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1219–20 (11th Cir. 2001) ("[T]he district court's order, not the certified question, is brought before the court on a § 1292(b) appeal, and this court's jurisdiction is not confined to the precise question certified by the district court."). A remand would interrupt consideration of the TIA question, prolonging the time until the claims at issue in this action are determined.

Moreover, a decision from the Second Circuit on class standing will more finally resolve that issue as opposed to proceeding with a district court decision subject to appeal. As Plaintiffs argued to the Second Circuit, "[i]nterlocutory review is ... warranted because there is considerable uncertainty and confusion among the District Courts in this Circuit regarding the extent to

---

7.  Pls.' Mem. of Law at 23.

8.  Pet. for Interlocutory Appeal, No. 13–661 (2d Cir.) at 1, 13 (quoting *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir.2000)).

9.  Tr. dated July 31, 2013 at 7:20–25 (Docket Entry # 97).

which the [Second Circuit's] opinion in *NECA–IBEW* applies to [mortgage-backed securities] trustee lawsuits."[10] Whichever way this Court might rule on class standing given another opportunity, the loser would be likely to appeal, whether on an interlocutory basis or after final judgment. Far from obviating the current appeal, proceeding with only a district court decision on class standing would not terminate the current appeal and would have the potential for spawning future appeals.

IV. *Whether Class Standing Presents a Substantial Issue*

Plaintiffs alternatively ask this Court to indicate to the Second Circuit that their motion raises a substantial issue. Class standing does present a substantial issue. The interlocutory appeal process exists to allow courts of appeal to decide substantial issues in a timely manner. The fact that Plaintiffs have now filed a motion raising the same substantial issue they appealed is no reason for the Second Circuit to remand. The only substantial issue Plaintiffs' motion raises is the same one on appeal, and the Second Circuit should decide it.

*CONCLUSION*

■ An appeal divests a district court of jurisdiction over the aspects of the case on appeal because "it is a waste of judicial resources for two courts to be considering the same issues in the same case at the same time." *Terry*, 886 F.2d at 1349. By asking this Court to issue an opinion indicating it would reverse its previous decision, currently on appeal, Plaintiffs have placed the same issue in front of two courts at the same time. Plaintiffs contend this court wrongly decided the class standing issue. Having appealed that decision and divested the district court of jurisdiction, their recourse is to proceed with the appellate process. A decision on Plaintiffs' motion is deferred until the appeal concludes. Plaintiffs are invited to renew their motion, if appropriate, at that time.

**10.** Pet. for Interlocutory Appeal, No. 13–661 (2d

The Clerk of the Court is directed to terminate the motion pending at ECF No. 83.

SO ORDERED.